UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SIMONE HRISTIDIS,

                    Plaintiff,

                – against –

YORK PREPARATORY SCHOOL and RONALD
STEWART

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**<u>COMPLAINT</u>**

Case No. _____

**Jury Trial Requested**

SIMONE HRISTIDIS ("Ms. Hristidis"), by and through her attorneys SAPIR SCHRAGIN LLP, as her Complaint against DEFENDANT YORK PREPARATORY SCHOOL ("York School" or "the School") and RONALD STEWART alleges as follows:

**<u>INTRODUCTION</u>**

1.     Simone Hristidis is the former Director of Admissions and Enrollment for York School until her employment was unlawfully terminated in August 2020 because she exercised her right to request a reasonable accommodation to work remotely because of the risk of severe complications from COVID-19 due to her underlying medical conditions and comorbidities.

2.     After 33 years at one of New York City's preeminent private schools, Ms. Hristidis was hired by Defendant Stewart in April 2018 to boost admissions and improve the gender breakdown of the student body which had been a problem at the School for years. Ms. Hristidis did her part – enrollment of girls increased, and the overall qualifications of the students improved during the two full years she oversaw admissions.

3.    On the other hand, York School and Defendant Stewart did not honor their commitment to Ms. Hristidis.  Instead, the School refused to accommodate her disabilities and terminated her employment when she rightfully refused to return to the office and put her health at risk when there was no reasonable need to do so given that she could perform all of her duties remotely and had been successfully doing so for the five months leading up to the termination of her employment.

4.    There was no reason why admissions could not continue to be done remotely, and no reasonable basis to require Ms. Hristidis to physically return to the office.  Yet, despite documented medical illnesses and the need for accommodations, Defendant Stewart continually attempted to force her back to the office.  When she refused to return to work against both the medical advice of her doctor and CDC and state guidelines for returning to work, and instead exercised her rights under the disability discrimination laws to seek a reasonable accommodation, her employment was unlawfully terminated.

5.    In doing so, Defendants violated her rights under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the Whistleblower provisions of the New York State Labor Law ("NYSLL"). Defendants also violated the age and gender discrimination provisions of the Age Discrimination in Employment Act ("ADEA"), Title VII, the NYSHRL and NYCHRL by terminating Ms. Hristidis' employment and replacing her with a younger female and younger male.

## PARTIES

6.      Plaintiff Simone Hristidis resides in Yonkers, New York. She was employed by Defendants from on or about April 16, 2018 through August 31, 2020. At the time of the termination of her employment, she was 58 years old.

7.      Defendant York School is a private, college preparatory school located at 40 West 68th Street in Manhattan.

8.      At all relevant times, Ms. Hristidis was an "employee" within the meaning of the ADEA, Title VII, the ADA, the NYSHRL, NYSLL, and the NYCHRL.

9.      At all relevant times, York School was an "employer" within the meaning of the ADEA, Title VII, the ADA, the NYSHRL, NYSLL, and the NYCHRL.

10.      At all relevant times, Defendant Stewart was the Headmaster of the York School and directly supervised Ms. Hristidis.  Defendant Stewart hired Ms. Hristidis, was responsible for the terms and conditions of her employment, had the authority to hire and fire individuals including Ms. Hristidis and was directly responsible for the retaliation to which Ms. Hristidis was subjected and the decision to terminate her employment.  As such, he was an employer within the meaning of the NYSHRL, NYSLL and NYCHRL.  Ms. Hristidis seeks to hold Defendant Stewart personally liable for his discriminatory and retaliatory conduct towards her.

## JURISDICTION AND VENUE

11.      Plaintiff invokes the Court's jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States. Plaintiff invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all state and local law claims because they arise

out of the same set of facts and circumstances as her federal claims.

12.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because York School's principal place of business is in New York County which is within the Southern District of New York; Defendant York School operates within New York County which is within the Southern District of New York; at all relevant times Plaintiff worked for Defendants in New York County which is within the Southern District of New York; and the discriminatory acts occurred within this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     On February 1, 2021, Ms. Hristidis timely filed a Charge with the Equal Employment Opportunity Commission (EEOC).

14.     On August 18, 2022, the EEOC issued Ms. Hristidis a Right to Sue Letter.

15.     This Complaint is being timely filed following an agreed upon tolling period in which the parties attempted to negotiate a resolution of these claims.

## FACTUAL ALLEGATIONS

16.     On or about April 16, 2018, Ms. Hristidis entered into a one-year contract with the York School for the period from April 16, 2018 through April 15, 2019.  Although Ms. Hristidis was the Director of Admissions and Enrollment for the School, her contract listed her as a teacher. These one-year teacher contracts are standard for New York City private schools, and it is the standard practice for York School to automatically renew the contracts on an annual basis.

17.     Ms. Hristidis' performance at the end of the first year was satisfactory and no performance issues were raised with her at the end of her contract year.

18.     Following completion of her first year, Ms. Hristidis' contract (consistent with York School practice) was renewed for another year.  The second contract was entered into on August 1, 2019 and covered the period from September 1, 2019 through September 1, 2020.

19.     In March 2020, the York School shut down in response to the COVID pandemic. All school functions were shifted to remote during the lockdown, including admissions.  The Admissions Department and all admissions activities were conducted remotely from March 2020 through, at least, March 2021.

20.     In the summer of 2020 when it became apparent that NYC private schools would attempt to reopen in September 2020 for in-person learning, the York School submitted the "York Prep School Reopening Plan: 2020-2021, Preparing for Fall Semester" to the State of New York. The Plan was updated as of July 30, 2020.  The Reopening Plan confirms that all admissions activities were still going to be conducted remotely: "Open houses and ***admissions*** will be conducted online." (emphasis added).  The Plan also provided that "Parents and visitors will not be allowed inside the school building until city guidance deems this safe.  All meetings and parent events will take place virtually for the time being."  The Plan also specifically accounts for remote work for vulnerable populations including Ms. Hristidis: "All students and faculty in vulnerable populations have the option of conducting/participating in remote instruction."  This was apparently the Plan for everyone other than Ms. Hristidis.

21.     Consistent with the "Reopening Plan" and because of her underlying medical conditions, Ms. Hristidis requested to continue to perform her admissions work remotely.

22.     In June 2020, Defendant Stewart requested that the admissions staff return to the office.  There was no essential need for her to perform her work from the office; everything could

continue to be done remotely consistent with the State-approved Reopening Plan. The admissions process continued to run smoothly while Ms. Hristidis worked remotely, in large part because Ms. Hristidis was proficient with the cloud-based program, Blackbaud, the School used to run its admissions programs. All calls to the school were routed to Ms. Hristidis' cell phone and were handled appropriately. They conducted virtual open houses and interviews. Overall, from March to July 2020, while working remotely, 22 new students enrolled in the school, representing a large percentage of new enrollments for the year.

23.     The successful operation of the admissions process remotely was reflected in the School's enrollment numbers. Following the termination of Ms. Hristidis' employment, Defendant Stewart wrote Ms. Hristidis an email congratulating her on their final enrollment numbers for the upcoming school year and her success in improving the gender breakdown at the school and increasing enrollment for female students. Defendant Stewart told her that "As of today [September 8, 2020] (and who knows?) we have 324. The good news is that the boy/girl ratio is excellent. Even with the 11th grade where there are 20 girls, we have 55% boys to 45% girls. Without the 11th grade it is virtually 50/50."

24.     On June 5, 2020, in response to York School's request to have Ms. Hristidis return to work, Ms. Hristidis emailed Defendant Stewart advising him that her "doctor simply wants me home over the next months to avoid the possibility of catching COVID" because of her underlying medical conditions which, at the time, were identified by the Centers for Disease Control (CDC) as comorbidities. Ms. Hristidis suffers from asthma and hypertension and, at the time, was overweight. (*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html). She also suffers from anxiety which was exacerbated during the COVID pandemic.

25.     In her June 5, 2020 email to Defendant Stewart, Ms. Hristidis offered to work out a schedule to come to the office occasionally to provide coverage but this was insufficient to Defendant Stewart because he wanted the admissions staff present every day even though the School's own State-approved Reopening Plan dictated that all admissions were going to be conducted virtually.  Ms. Hristidis also reiterated her commitment to York Prep School: "I obviously remain dedicated to York and my work there so I would like to discuss this all with you when you get a chance."

26.     On June 11, 2020, Defendant Stewart again requested that Ms. Hristidis come to work at least 2 days a week only because he was coming to the office two days a week and he wanted her there the days that he was in the office: "I need you here the same amount of time as me."  There was no legitimate reason for Ms. Hristidis to return to the office two days a week other than Defendant Stewart's disapproval of her working remotely because he was coming into the office.

27.     In response, Ms. Hristidis advised Defendant Stewart again that her doctor recommended that she work remotely and reassured him that all her work can successfully be done from home:

> "I have been instructed by my doctor, (I just got off the phone with him and my blood results show that I don't have the antibodies) to work remotely unless its an emergency. I am not comfortable putting my health at risk unnecessarily. At this point, I can work everyday and do everything you need remotely and Tracy [Warner] will work in the office for the month of June Mondays-Thursdays. . . .  Tracy and I are in communication everyday so that nothing slips through and we do daily zoom calls ourselves. I am still receiving calls forwarded from school which I always pick up, however they have been minimal."

28.     Ms. Hristidis subsequently submitted a doctor's note reflecting the need to "work from home for the next three months" because she is "at increased risk for complications from a COVID infection."  While working from home, Ms. Hristidis began providing daily updates to alleviate any concerns Defendant Stewart had about a lack of knowledge of what was going on with the Admissions Department.  During this time, Ms. Hristidis took no vacation days and worked every day to service the School.

29.     On July 9, 2020, under repeated pressure to go to the office despite the risks, Ms. Hristidis, in fear of losing her job, finally relented and agreed to go into the office one day a week but told Mr. Stewart that she was "going to be very strict about the protocols in the office the day I am there and would like to talk to Beycan [the third party cleaning service used by the school] about the cleaning and using an ultraviolet light at night." She reiterated that she was "incredibly concerned about the risk but I understand that you want the office covered – even though I am confident in my ability to run things remotely."  Her concerns were disregarded because Mr. Stewart wanted her back in the office so he could micromanage, dominate, and control every aspect of her employment.  It is important to remember that as of July 30, the State-approved Reopening Plan had all admissions being done virtually so there was no reason why Ms. Hristidis could not continue to work remotely.

30.     On August 12, 2020, Ms. Hristidis was forced to go into the office to meet with Defendant Stewart and John Beich, Director of Inclusive Education & Deputy Head of Student Enrollment, to discuss plans for the fall school year.  Ms. Hristidis requested the following safety protocols prior to coming to the office: deep cleaning, mask wearing, social distancing, and open windows.  Her requests were not honored.

31.     During the meeting she complained that people at the School, including Defendant Stewart, were not wearing masks inside and not complying with the CDC and New York State guidelines.

32.     Ms. Hristidis again requested to work remotely because of her medical conditions and the serious risk to her health posed by COVID and the ongoing failure of the School to enforce mandated protective measures.  Mr. Stewart refused to let her work remotely, claiming that he needed to "bounce" ideas off her in person.  This was not true.  And, even it was true, COVID has shown that people can work collaboratively via telephone, video conference, text message or email.  In fact, Ms. Hristidis explicitly told Mr. Stewart that she would speak with him by phone or video conference as often as needed and would do anything needed to facilitate communications.  Mr. Stewart still told her words to the effect, "that was not enough" and steadfastly insisted on her working physically in the office without any legitimate reason for this decision.  Again, Mr. Stewart wanted her there so he could micromanage, dominate, and control her every move on a day-to-day basis.

33.     On August 17, 2020, Ms. Hristidis again requested to work remotely because of her medical condition.  She even offered to take a lower salary.  The next day, on August 18, 2020, in furtherance of her request for a reasonable accommodation to work remotely, she submitted her second doctor's note reiterating that she suffered from chronic asthma and hypertension and recommending that she "work from home for the indefinite future" because she is at "increased risk for complications from a COVID infection."

34.     On the same day she submitted her second doctor's note requesting a reasonable accommodation to work remotely, Ms. Hristidis received notice that her employment was terminated effective August 31, 2020.

35.     The close temporal proximity between Ms. Hristidis' request for a reasonable accommodation and submission of a doctor's note and the termination of her employment is *prima facie* and extremely compelling evidence that the York School and Defendant Stewart discriminated against and retaliated against Ms. Hristidis because she attempted to exercise her rights under the ADA, NYSHRL and NYCHRL, and because she complained about Defendants' failure to comply with New York State and City COVID safety protocols.

36.     Moreover, under the ADA, NYSHRL, and NYCHRL the School had an affirmative duty to provide an accommodation to Ms. Hristidis to allow her to continue to work remotely as she had done successfully for the past five months.  Apparently, the School never considered its legal obligation with regard to Ms. Hristidis and instead jumped to the unlawful decision to terminate her employment simply because she had the temerity to challenge Defendant Stewart's desire to have everyone work in the office regardless of their health condition, the risks posed or the actual need to do so.

37.     After the termination of her employment, Ms. Hristidis' role was assumed by two younger employees without underlying medical conditions identified as comorbidities to COVID.

**FIRST CAUSE OF ACTION**
**(Disability Discrimination in Violation of the ADA Against Defendant York School)**

38.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

39.     The ADA requires employers to reasonably accommodate a qualified employee with a known disability so long as doing so would not impose an undue hardship on the operation of the employer's business.

40.     Defendant York School discriminated against Ms. Hristidis by refusing to reasonably accommodate her disability. Specifically, Defendant refused to continue to allow her to work remotely despite: (i) the fact that she had been successfully doing so for months prior to the termination of her employment; (ii) her documented comorbidities which put her at a far higher risk of dying from contracting COVID; (iii) the fact that her position easily could have been performed remotely and was supposed to be performed remotely according to the School's own Reopening Plan.

41.     Defendant then terminated Ms. Hristidis' employment because Defendant Stewart harbored discriminatory animus towards her because she needed an accommodation, requested to work remotely and refused to return to the office for fear of her life without accommodation.

42.     As a result of Defendant's discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

43.     As a direct and proximate result of Defendant's discriminatory and unlawful conduct in violation of the ADA, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

44.     Defendant's conduct was reckless if not intentional, and, therefore, Ms. Hristidis is entitled to punitive damages.

## SECOND CAUSE OF ACTION
**(Retaliation in Violation of the ADA Against Defendant York School)**

45.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

46.     The ADA prohibits retaliation against employees who invoke their rights under the Act or who oppose conduct they reasonably and in good faith believe to be unlawful under the Act.

47.     Defendant violated the ADA when it terminated Ms. Hristidis' employment in retaliation for her raising concerns about her own disability and the School's failure to accommodate it, which put her at far higher risk of contracting and dying from Covid-19.

48.     As a result of Defendant's discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

49.     As a direct and proximate result of Defendant's discriminatory and unlawful conduct in violation of the ADA, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

50.     Defendant's conduct was reckless if not intentional, and, therefore, Ms. Hristidis is entitled to punitive damages.

**THIRD CAUSE OF ACTION**
**(Age Discrimination in Violation of the ADEA Against Defendant York School)**

51.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

52.     The ADEA makes it unlawful for any employer to discharge any individual because of that individual's age.

53.     Ms. Hristidis was 58 years old at the time Defendant York School terminated her employment.  Ms. Hristidis was replaced by two significantly younger employees.

54.     In terminating Ms. Hristidis' employment because of her age, Defendant violated the ADEA.

55.     As a result of Defendant's discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

56.     As a direct and proximate result of Defendant's discriminatory and unlawful conduct in violation of the ADEA, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

57.     Defendant's conduct was willful, wanton and egregious, and, therefore, Ms. Hristidis is entitled to liquidated damages.

**FOURTH CAUSE OF ACTION**
**(Sex Discrimination in Violation of Title VII Against Defendant York School)**

58.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

59.     Title VII forbids any employer or agent thereof from discriminating against an employee on account of that employee's sex.

60.     Defendant York School discriminated against Ms. Hristidis based upon her sex in violation of Title VII when it terminated her employment and replaced her with a younger male employee.

61.     As a result of Defendant's discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

62.     As a direct and proximate result of Defendant's discriminatory and unlawful conduct in violation of Title VII, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

63.     Defendant's conduct was willful, wanton and egregious, and, therefore, Ms. Hristidis is entitled to punitive damages.

## FIFTH CAUSE OF ACTION
### (Disability Discrimination in Violation of the NYSHRL Against Defendants)

64.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

65.     The NYSHRL requires employers to reasonably accommodate the known disabilities of an employee, unless doing so would impose an undue hardship on the employer's enterprise.

66.     Defendants discriminated against Ms. Hristidis by refusing to reasonably accommodate her disability. Specifically, they refused to continue to allow her to work remotely despite: (i) the fact that she had been successfully doing so for months prior to the termination of

her employment; (ii) her documented comorbidities which put her at a far higher risk of dying from contracting COVID; (iii) the fact that her position easily could have been performed remotely and was supposed to be performed remotely according to the School's own Reopening Plan.

67.     Defendants then terminated Ms. Hristidis' employment because Defendant Stewart harbored discriminatory animus towards her because she needed an accommodation, requested to work remotely and refused to return to the office for fear of her life without accommodation.

68.     As a result of Defendants' discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

69.     As a direct and proximate result of Defendants' discriminatory and unlawful conduct in violation of the NYSHRL, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

70.     Defendants' conduct was reckless if not intentional, and, therefore, Ms. Hristidis is entitled to punitive damages.

## SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the NYSHRL Against Defendants)**

71.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

72.     The NYSHRL prohibits employers from discharging or otherwise discriminating against any person because she has opposed an unlawful discriminatory practice.

73.     Defendants violated the NYSHRL when they terminated Ms. Hristidis' employment in retaliation for her raising concerns about her own disability and the School's failure to accommodate it, which put her at far higher risk of contracting and dying from Covid-19.

74.     As a result of Defendants' discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

75.     As a direct and proximate result of Defendants' discriminatory and unlawful conduct in violation of the NYSHRL, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

76.     Defendants' conduct was reckless if not intentional, and, therefore, Ms. Hristidis is entitled to punitive damages

### SEVENTH CAUSE OF ACTION
**(Age Discrimination in Violation of the NYSHRL Against Defendants)**

77.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

78.     The NYSHRL makes it unlawful for any employer to discharge any individual because of that individual's age.

79.     Ms. Hristidis was 58 years old at the time Defendants terminated her employment. Ms. Hristidis was replaced by two significantly younger employees.

80.     In terminating Ms. Hristidis' employment because of her age, Defendants violated the NYSHRL.

81.     As a result of Defendants' discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

82.     As a direct and proximate result of Defendants' discriminatory and unlawful conduct in violation of the NYSHRL, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages

83.     Defendants' conduct was willful, wanton and egregious, and, therefore, Ms. Hristidis is entitled to punitive damages.

### EIGHTH CAUSE OF ACTION
**(Sex Discrimination in Violation of the NYSHRL Against Defendants)**

84.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

85.     The NYSHRL forbids any employer or agent thereof from discriminating against an employee on account of that employee's sex.

86.     Defendants discriminated against Ms. Hristidis based upon her sex in violation of the NYSHRL when they terminated her employment and replaced her with a younger male employee.

87.     As a result of Defendants' discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

88.     As a direct and proximate result of Defendants' discriminatory and unlawful conduct in violation of the NYSHRL, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

89.     Defendants' conduct was willful, wanton and egregious, and, therefore, Ms. Hristidis is entitled to punitive damages.

**NINTH CAUSE OF ACTION**
**(Disability Discrimination in Violation of the NYCHRL Against Defendants)**

90.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

91.     The NYCHRL requires employers to reasonably accommodate the known disabilities of an employee, unless doing so would impose an undue hardship on the employer's enterprise.

92.     Defendants discriminated against Ms. Hristidis by refusing to reasonably accommodate her disability. Specifically, they refused to continue to allow her to work remotely despite: (i) the fact that she had been successfully doing so for months prior to the termination of her employment; (ii) her documented comorbidities which put her at a far higher risk of dying from contracting COVID; (iii) the fact that her position easily could have been performed remotely and was supposed to be performed remotely according to the School's own Reopening Plan.

93.     Defendants then terminated Ms. Hristidis' employment because Defendant Stewart harbored discriminatory animus towards her because she needed an accommodation, requested to work remotely and refused to return to the office for fear of her life without accommodation.

94.     As a result of Defendants' discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost

privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

95.     As a direct and proximate result of Defendants' discriminatory and unlawful conduct in violation of the NYCHRL, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

96.     Defendants' conduct was reckless if not intentional, and, therefore, Ms. Hristidis is entitled to punitive damages.

## TENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL Against Defendants)

97.     Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

98.     The NYCHRL prohibits employers from discharging or otherwise discriminating against any person because she has opposed an unlawful discriminatory practice.

99.     Defendants violated the NYCHRL when they terminated Ms. Hristidis' employment in retaliation for her raising concerns about her own disability and the School's failure to accommodate it, which put her at far higher risk of contracting and dying from Covid-19.

100.     As a result of Defendants' discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

101.     As a direct and proximate result of Defendants' discriminatory and unlawful conduct in violation of the NYCHRL, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

102.    Defendants' conduct was reckless if not intentional, and, therefore, Ms. Hristidis is entitled to punitive damages

## ELEVENTH CAUSE OF ACTION
### (Age Discrimination in Violation of the NYCHRL Against Defendants)

103.    Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

104.    The NYCHRL prohibits employers from discriminating against employees because of their age.

105.    Ms. Hristidis was 58 years old at the time Defendants terminated her employment. Ms. Hristidis was replaced by two significantly younger employees.

106.    In terminating Ms. Hristidis' employment because of her age, Defendants violated the NYCHRL.

107.    As a result of Defendants' discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

108.    As a direct and proximate result of Defendants' discriminatory and unlawful conduct in violation of the NYCHRL, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages

109.    Defendants' conduct was willful, wanton and egregious, and, therefore, Ms. Hristidis is entitled to punitive damages.

**TWELFTH CAUSE OF ACTION**
**(Sex Discrimination in Violation of the NYCHRL Against Defendants)**

110.    Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

111.    The NYCHRL forbids any employer or agent thereof from discriminating against an employee on account of that employee's sex.

112.    Defendants discriminated against Ms. Hristidis based upon her sex in violation of NYCHRL when they terminated her employment and replaced her with a younger male employee.

113.    As a result of Defendants' discrimination, Ms. Hristidis has and continues to suffer lost wages, lost employment and career opportunities, and other pecuniary damages and lost privileges of employment, and has incurred and will continue to incur attorney's fees and costs in the prosecution of her claims.

114.    As a direct and proximate result of Defendants' discriminatory and unlawful conduct in violation of the NYCHRL, Ms. Hristidis has suffered and continues to suffer emotional distress, emotional pain and suffering for which she is entitled to an award of damages.

115.    Defendants' conduct was willful, wanton and egregious, and, therefore, Ms. Hristidis is entitled to punitive damages.

**THIRTEENTH CAUSE OF ACTION**
**(Retaliatory Discharge in Violation of NYSLL § 740 Against Defendants)**

116.    Plaintiff repeats and realleges each allegation contained in the paragraphs above as if fully set forth herein.

117.    Under NYSLL § 740(2), employers are prohibited from taking retaliatory personnel action against an employee because she "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee

reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety NYSLL § 740(2).

118.    Defendants violated NYSLL § 740 by failing to follow mandated safety standards for preventing the spread of Covid-19, and then terminating Ms. Hristidis' employment when she complained about this failure.

119.    Ms. Hristidis engaged in protected activity within the meaning of NYSLL § 740(2) when, on June 5, and June 11, 2020, in response to the School's requests that she return to work in the office, Ms. Hristidis advised the School that her doctor recommended that she continue to work from home to avoid catching COVID, which her underlying medical conditions made her more vulnerable to.

120.    Ms. Hristidis engaged in protected activity within the meaning of NYSLL § 740(2) when, on July 9, and July 12, 2020, after continual pressure to return to work in the office, Ms. Hristidis finally consented to come into the office but requested specific safety protocols to be followed there including deep cleaning, mask wearing, social distancing, and open windows. When these requests were not honored, Ms. Hristidis complained and again requested to be permitted to work remotely.

121.    Ms. Hristidis engaged in protected activity when, on August 17 and 18, she again requested permission to work remotely and submitted a doctor's note indicating her higher risk for becoming severely ill or dying from COVID.

122.    Defendants' activities, policies and practices that Ms. Hristidis complained about and objected to were in violation of laws, rules, or regulations.

123.    Defendants violated Executive Order 202.16, which provides, "For all essential businesses or entities, any employees who are present in the workplace shall be provided and shall

wear face coverings when in direct contact with customers or members of the public." Executive Order 202.17 provided that, "any individual who is over the age two and able to medically tolerate a face-covering shall be required to cover their nose and mouth with a mask or cloth face-covering when in a public place and unable to maintain, or when not maintaining, social distance."

124.    Defendants violated 10 NYCRR 66.32, which provides that "Any person who is over age two and able to medically tolerate a face-covering shall be required to cover their nose and mouth with a mask or face-covering when in a public place and unable to maintain, or when not maintaining, social distance." 10 NYCRR 66.32(e) also provides, "(ii) A personal shall be considered as maintaining social distancing when keeping at least six feet distance between themselves and any other persons, other than members of such persons' household."

125.    Defendants also violated the Occupational Safety and Health Act of 1970 ("OSH ACT"), 29 U.S.C §§ 651 et seq., and implementing regulations promulgated by the Occupational Safety and Health Administration ("OSHA"), 29 C.F.R. Part 1910, which generally make it unlawful for an employer to provide an unsafe working environment. Section 5(a)(1) of the OSH Act, known as the general duty clause, provides that each employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees[.]" 29 U.S.C. § 654(a)(1).

126.    Defendants also violated the New York State Department of Health Interim Guidance for Pre-K through 12 schools, issued July13, 2020. These guidelines stated that "an acceptable face covering…is to be worn any time or place that individuals cannot maintain appropriate social distancing."

127.    In addition, Defendants violated the New York State Education Department Reopening Guidance for K-12 schools, which require that the "District/school plan has written protocol detailing how the district/school will provide accommodations to all students and staff who are at high risk or live with a person at high risk."

128.    The activities, practices and policies complained about by Ms. Hristidis represented dangers to public health and safety by increasing the risk that employees, students, vendors, and others would contract COVID, putting the safety of the community at risk of a deadly disease.

129.    As a result of the unlawful retaliatory termination of her employment, Ms. Hristidis has suffered lost wages, benefits, and other pecuniary damages.

130.    As a result of the unlawful retaliatory termination of her employment, Ms. Hristidis has also suffered and continues to suffer emotional distress, pain and suffering, and physical and mental anguish.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A.    Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the ADA, ADEA, NYSHRL, NYCHRL, and NYSLL;

B.    An award of lost wages, employment benefits and other lost compensation as a result of Defendants' discrimination against Ms. Hristidis on the basis of her disability, age, and sex;

C.    Reinstatement to Ms. Hristidis' position (or a comparable position) and back pay or, alternatively, an award of front pay until the date on which Ms. Hristidis intended to resign from her position;

D.      An award of liquidated damages, compensatory and punitive damages;

E.      Pre-judgment interest;

F.      Attorneys' fees and costs; and

G.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all issues in this action properly triable before a jury.

Dated: White Plains, New York
       November 30, 2022

                              **SAPIR SCHRAGIN LLP**

                              By: _____
                                    Howard Schragin, Esq.
                                    399 Knollwood Rd., Suite 310
                                    White Plains, New York 10603
                                    (914) 328-0366
                                    hschragin@sapirschragin.com
                                    *Attorneys for Plaintiff*